October 31.
JUDGE COAETER
delivered his opinion.*
Although this case is rendered somewhat obscure, from the manner in which the points arising are stated in the various Bills of Exceptions, it seems to be substantially a case of this nature:
Thomas Jones departed this life intestate, leaving a widow and an only child, the present Plaintiff, who was an infant.
The widow administered on the estate, and having received the estate, and also derived considerable profit therefrom, she, with the assent of the Guardian of the child, made a purchase of several slaves, with the monies of the estate, and amongst them, the slave in controversy. The widow afterwards intermarried with Pleasant Rosser, after which, an order of Court was made, (on whose motion is not stated in the Record,) appointing Commissioners to assign to the widow her share of the real and personal estate. Rosser and Wife, and the Guardian of the infant, attended at the division made by the Commissioners, whether the husband and wife brought forward the slaves so purchased, as part of the estate of the intestate, and made no other account of the profits of the estate, and the Guardian of the infant agreed to accept the same as part of the father’s estate, instead of any other account of profits; and thus, by the ®assent of all parties, they were treated and divided by the Commissioners of the estate of the intestate. Five slaves were thus allotted to the widow, including Ford, the slave in controversy, and Dorcas and her son Sam; which Dorcas was probably also one of the slaves so purchased, as one of that name is in the Bill of Sale.
The division thus made, was returned to Court and recorded. After this, the Defendant purchased the slave Ford from Rosser. The manner of this transaction is detailed in an Answer of the Defendant to a Bill in Chancery, exhibited against him and others, in relation to a slave named Daniel, by one Talbot, in which he states, that Rosser, having intermarried with the widow of Thomas Jones, acquired, in her right, a number of slaves, and amongst others, the slave Ford, and that he is informed, and believes, that Ford was allotted by Commissioners appointed to divide the estate of Thomas Jones, as part of Mrs. Rosser’s dower slaves: that Rosser proffered to sell Ford to him, telling him he could procure from the Plaintiff a release of any right he might have at his mother’s death ; and that having had a communication with the Plaintiff a short time before, from which he was led to believe that such release might be procured on certain terms, he be *792 came the purchaser, on Rosser’s executing a Deed of Trust on the slave Daniel, to secure the title of Ford: that the Defendant therefore claims the benefit of the Deed of Trust on Daniel, until the title to Ford is perfected, Rosser having failed to procure the release, and the Plaintiff asserting his title to Ford after the death of his mother.
Thus it seems the matter rested, till after the death of Mrs. Rosser, when the Plaintiff instituted this suit for the recovery of Ford.
The first Bill of Exceptions sets out the order of Court appointing Commissioners, and their report. These documents were objected to, because there had been no suit for the division of the estate, and because Pleasant Rosser was no party to the proceedings; but, the Court over-ruled *the objections, and admitted the paper as evidence, the Plaintiff being at liberty to prove by other evidence, that Rosser was a party in procuring the order of Court, and present at, and consenting to, the division. The same Bill of Exceptions sets out the Answer of the Defendant above noticed, which was offered by the Plaintiff, and objected to by the Defendant, because the Plaintiff in this suit was no party to that suit; which fact, to save the expense of copying the whole Record, was admitted. This objection was over-ruled, and the Answer admitted to be read, in order to prove the declarations of the Defendant in regard to his knowledge of the title to the slave at the time of his purchase.
It is furthermore set out in this Bill of Exceptions, that the Plaintiff introduced a witness to prove the declarations of Rosser, under whom the Defendant claims title, but the Defendant objected to any evidence of the declarations of Rosser, made after he had sold the slave in question. But the Court allowed the Plaintiff to prove any declarations of Rosser, respecting the division of the estate of Thomas Jones, and which were calculated to show how, and upon what considerations it happened that the slave in question was held, and regarded by him and his wife, as part of the estate of Jones, though purchased by the Administratrix, after the death of said Jones, or any declarations which admitted that said slave was purchased for the estate, and was paid for with the money of the estate; also, any declarations which went to an acknowledgment that said Rosser was present at the time of the allotment, set out in the documents before referred to, no matter at what time these declarations were made.
For the contents of the second Bill of Exceptions, see the statement prefixed to this opinion.
The third Bill of Exceptions sets out the testimony as to the purchase of the slave by the Widow and Administratrix, with the monies of the estate as first above stated, and the instruction of the Court, that by consent of the ^parties interested, a slave thus circumstanced might be substituted, and pass as part of the dower slaves of a widow; and that if the Jury should be of opinion, from the evidence, that such consent was made by the parties at the time, and acted on accordingly, the slave must pass to the Plaintiff, in like manner as if he had been the property of the Plaintiff’s father.
The Jury being satisfied of the facts stated in this last Bill of Exceptions, and being no doubt also satisfied of the fact, that the Defendant had full notice of the Plaintiff’s claim, and that he had taken satisfactory security for the title when he made the purchase, there can be no doubt where the justice of this case lies. The only question is, whether any thing has been decided by the Court which shall make it necessary to reverse the Judgment.
The order of Court, and the report of the Commissioners, were properly admitted as evidence, especially when connected with the other facts, showing the assent, and presence of all parties at the time of the allotment. The Answer too, was properly admitted, to show that the Defendant was informed that the slave in dispute had been allotted, and that the Plaintiff claimed him after the death of his mother.
And as to the declarations made by Rosser, after the sale to the Defendant, that such allotment had been made, and that the slave was held bjr him and his wife under it, as stated in the Bill of Exceptions, however that matter might have been but for the disclosures and circumstances stated in the Answer set out in the first Bill of Exceptions, yet as these declarations were in accordance with the notice the Defendant admits he received before his purchase, I cannot say they were improperly admitted to go to the Jury. They were mere repetitions of what the vendor had, in perfect fairness, made known to his vendee at the time of the sale.
So, too, as to the facts set out in the third Bill of Exceptions, if they were believed by the Jury, they well warranted the conclusion they were instructed they might *draw from them, to wit, that as the parties had agreed to consider the slaves, purchased with the monies of the estate, as though they originally belonged to it, and had treated them as such, instead of calling the Administratrix to account for the estate, it was an arrangement that bound her and her husband, and was equally binding on those claiming under him, so as to vest the title in the Plaintiff, in like manner as if they had belonged to the intestate.
The only remaining question, is that arising out of the second Bill of Exceptions, as to the parol gift of a slave by a parent to an infant child, residing with him. As an abstract point of Law, this I think was badly decided, and how such a question could arise in this case, in which nothing is said about a gift of a slave, is not perceived.
Had an instruction been asked for on that point, it seems to me, it might well have been refused on that ground; and had the Court simply told the Jury, that however the Law might be on that point, as there was no case before tffem involving the question, it would be improper for them to consider it. I presume there would have been no doubt of the propriety of such direction. It would seem to me hard and *793 unreasonable, therefore, that an erroneous opinion of a Court on a point, which, decided either way, would not affect rhe case before them, should have the effect of reversing- a Judgment, clearly right, according to the merits of the case really before the Court and Jury.
A< at present advised, I am not inclined to reverse the Judgment on this ground. If we did so. we could only direct that on a new trial, if the case should be made out as one of a parol gift of the slave in dispute, no such direction should be given. But as no such case had been insisted on, but the reverse, as expressly stated in the third Bill of Exceptions, it would surely be idle to send it back under the preposterous idea that the Plaintiff would make out such a case, and thereby' clearly defeat his own claim.
JUDGE)?» CABELL and CARR concurred that the Judgment should be affirmed.

 Absent, the President and Judge Green.